Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Parte Apelado<br><br>v.<br><br>JAIRO RIVERA RODRÍGUEZ<br><br>Parte Apelante | KLAN202500462 | *Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Caguas*<br><br>Sobre:<br>CP 93.B 1er grado (2012) y Otros<br><br>Caso núm.:<br>EVI2024G0001<br>EVI2024G0002<br>EBD2024G0010<br>EOP2024G0001<br>ELA2024G0003<br>ELA2024G0004 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rodríguez Flores y el Juez Robles Adorno[1]

Robles Adorno, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de abril de 2026.

El 23 de mayo de 2025, el señor Jairo Rivera Rodríguez (el señor Rivera Rodríguez o el apelante) presentó ante nos un recurso de *Apelación* en el que solicitó que revoquemos la *Sentencia* emitida el 29 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario).[2]

En el aludido dictamen, se condenó al señor Rivera a cumplir la pena de noventa y nueve (99) años por el Artículo 93(b) del *Código Penal de Puerto Rico* (Código Penal), 33 PARA sec. 5142; la pena de veinte (20) años por tentativa de Artículo 93(b) del Código Penal, *supra*; la pena de diez (10) años por tentativa al Artículo 190(b) del Código Penal, *supra* sec. 5260; la pena de veinte (20) años por el Artículo 249 (a) del Código Penal, *supra* sec. 5339. Se dispuso, además, que penas debían cumplirse de manera concurrente entre

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Pagán Ocasio.
[2] Véase autos originales.

sí y consecutiva con la pena de veinte años de cárcel por el delito tipificado en el Artículo 6.05 de la *Ley de Armas de Puerto Rico*, Ley Núm. 168-2019, 25 LPRA sec. 466d y la pena de diez (10) años por el delito bajo el Artículo 6.14 de la Ley Núm. 168-2019, *supra* sec. 466m. Esto, luego de que un jurado encontrara culpable de manera unánime de los delitos antes mencionado.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El 8 de diciembre de 2023, el Ministerio Público sometió varias denuncias contra el señor Rivera Rodríguez por violación a los Artículos 93(a) del Código Penal, *supra,* (Asesinato en primer grado) en su modalidad de tentativa, Artículo 93(b) del Código Penal, *supra* sec. 5142, (Asesinato estatutario), Artículo 190 (e) del Código Penal, *supra sec. 5260* (robo agravado), Artículo 249 (a) del Código Penal, *supra sec. 5339* (Riesgo a la seguridad u orden público al disparar un arma de fuego), un cargo por violación al Artículo 6.14 de la Ley Núm. 168-2019, *supra* sec. 466m (Disparar o Apuntar Armas de Fuego) y dos cargos por violación al Artículo 6.05 de la Ley Núm. 168-2019, *supra* sec. 466d (Portación, Transportación o Uso de Armas de Fuego sin Licencia).

Celebrada la vista preliminar, el foro primario determinó el 8 de enero de 2024, causa probable para juicio en los delitos tipificados en los Artículos 93(b) (dos cargos) del Código Penal; Artículo 190(e) del Código Penal en su modalidad de tentativa; el Artículo 249(a) del Código Penal; un cargo por violación al Artículo 6.05 de la Ley Núm. 168-2019 (denuncia E1VP202301678) y un cargo por violación al Artículo 6.14(a) de la Ley Núm. 168-2019. Se encontró no causa probable en una denuncia (E1VP202301679) por violación al Artículo 6.05 de la Ley Núm. 168-2019.

El 9 de enero de 2024, el Ministerio Público radicó seis (6) pliegos acusatorios por Artículo 93 del Código Penal; tentativa al Artículo 93 el Código Penal, tentativa al Artículo 190 del Código Penal, Artículo 249 del Código Penal; un cargo por el Artículo 6.05 de la Ley de Armas y otro por el Artículo 6.14 de la Ley de Armas.

Específicamente la acusación (caso EVI2024G0001) por violación al Artículo 93 (b) del Código Penal se le imputó al señor Rivera Rodríguez lo siguiente:

> El referido acusado Jairo Rivera Rodríguez actuando en concierto y común acuerdo con otra persona, allá en o para el día 3 de diciembre de 2023 y en Bo. Guavate Carr. 184, km. 22.6, en Cayey, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Caguas, a propósito, y con conocimiento, ilegal, voluntaria, criminal e intencionalmente: dio muerte al Sr. Fidencio Alicea Arroyo, ocurrida al perpetrarse o intentar perpetrarse el delito robo, consistente en que luego de anunciarle el robo, le disparó en varias ocasiones, causándole heridas de bala que le ocasionaron la muerte en el acto.

En la acusación por infracción al Artículo 93B del Código Penal (caso EVI2024G0002) se le imputó lo siguiente:

> El referido acusado Jairo Rivera Rodríguez, actuando en concierto y común acuerdo con otra persona, allá en o para el día 3 de diciembre de 2023, y en Bo. Guavate Carr. 184, Km. 22.6, en Cayey, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Caguas, a propósito, y con conocimiento, ilegal, voluntaria, criminal e intencionalmente realizó actos inequívocamente dirigidos a ocasional la muerte a Margarita Sánchez Vega, al intentar perpetrarse el delito de robo, consistente en que luego de anunciarse el robo, le disparó en varias ocasiones, sin lograr la muerte pretendida por causas ajenas a su voluntad.

En el pliego acusatorio por tentativa al Artículo 190 del Código Penal (caso EBD2024G00010), se le imputó al señor Rivera Rodriguez:

> El referido acusado Jairo Rivera Rodríguez, actuando en concierto y común acuerdo con otra persona, allá en o para el día 3 de diciembre de 2023, y en Bo. Guavate Carr. 184, Km. 22.6, en Cayey, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Caguas, a propósito, y con conocimiento, ilegal, voluntaria, criminal e intencionalmente realizó actos inequívocamente dirigidos a apropiarse ilegalmente por medio de violencia e intimidación de bienes propiedad del Sr. Fidencio Alicea Arroyo y la Sra. Margarita Sánchez Vega, consistente en que utilizando un arma de fuego intentó robarles el dinero a las víctima, sin lograr lo pretendido por causas ajenas a su voluntad.

En el pliego acusatorio por infracción al Artículo 249 del Código Penal (caso EOP2024G0001), se le imputó al señor Rivera Rodríguez:

> El referido acusado Jairo Rivera Rodríguez, actuando en concierto y común acuerdo con otra persona, allá en o para el día 3 de diciembre de 2023, y en Bo. Guavate Carr. 184, Km. 22.6, en Cayey, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Caguas, a propósito, y con conocimiento, ilegal, voluntaria, criminal e intencionalmente disparó un arma de fuego desde un vehículo de motor en un lugar público, poniendo en riesgo la seguridad u orden público.

El pliego acusatorio por infracción al Artículo 6.14 (a) de la Ley Núm. 168-2019 (caso ELA2024G0004), establecía:

> El referido acusado Jairo Rivera Rodríguez, actuando en concierto y común acuerdo con otra persona, allá en o para el día 3 de diciembre de 2023, y en Bo. Guavate Carr. 184, Km. 22.6, en Cayey, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Caguas, a propósito, y con conocimiento, ilegal, voluntaria, criminal e intencionalmente apuntó y disparó un arma de fuego contra el Sr. Fidencio Alicea Arroyo fuera de los lugares por ley.

En el pliego acusatorio (caso EVI2024G001), el Ministerio Publico le imputó al señor Rivera Rodríguez lo siguiente:

> El referido acusado Jairo Rivera Rodríguez, actuando en concierto y común acuerdo con otra persona, allá en o para el día 3 de diciembre de 2023, y en Bo. Guavate Carr. 184, Km. 22.6, en Cayey, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Caguas, a propósito, y con conocimiento, ilegal, voluntaria, criminal e intencionalmente realizó actos inequívocamente transportó y/o portó un arma de fuego consistente de una pistola Glock, calibre 9mm, color negra, cargada sin tener una licencia de armas vigente bajo la Ley de Armas.

Luego de varios tramites procesales, el juicio por jurado se celebró los días 9 y 17 de diciembre de 2024, 3,5,7, 12, 13, 27 de febrero de 2025 y 5 de marzo de 2025. Durante la vista del 5 de marzo de 2025, la representación legal del señor Rivera Rodríguez solicitó unas instrucciones especiales. El foro primario determinó dar la instrucción del asesinato en primer grado, de la intoxicación, del asesinato en segundo grado y la tentativa de asesinato. Además, dará la instrucción de tentativa de robo agravado, sola la defensa de desistimiento, el Artículo 249 y la Ley Núm. 168-2019. A tenor con

lo planteado por la defensa, el Tribunal determinó que daría la instrucción sobre los delitos estatuidos en el Artículo 6.14 y 6.05 de la Ley Núm. 168-2019, y los elementos del delito. La defensa también solicitó la instrucción 4.2 del Libro de Instrucciones al Jurado.

Asimismo, surge de la minuta que luego de leída las instrucciones al jurado, el TPI le preguntó si deseaban alguna otra instrucción, y que ambas partes contestaron en la negativa.

Luego del procedimiento de deliberación, el jurado emitió un veredicto unánime de culpabilidad por el delito de Art. 93 (b) del Código Penal, en el caso EVI2024G0001; veredicto unánime de culpabilidad por el delito de tentativa de Art. 93 (b) del Código Penal, caso EVI2024G0002; veredicto unánime de culpabilidad en el caso EBD2024G00010 por tentativa de Art. 190 (e) del Código Penal; veredicto unánime de culpabilidad por el delito, Art.6.05 de la Ley Núm. 168-2019 en el caso ELA2024G0003 y un veredicto unánime de culpabilidad en el caso ELA2024G0004 por el Art. 6.14 (a) de la Ley Núm. 168-2019.

El 24 de marzo de 2025, la defensa presentó una *Moción de Nuevo Juicio* fundamentado en que el veredicto de culpabilidad es contrario a derecho o a la prueba según la Regla 188 (c) de Procedimiento Criminal, 34 LPRA Ap. II, R. 188. En esencia, la defensa argumentó que la prueba desfilaba por el Ministerio Público carecía de algún elemento para que se configuraran los delitos por los cuales se le encontró culpable al señor Rivera Rodríguez.

El 3 de abril de 2025, el Ministerio Público radicó una *Contestación a Moción Solicitando Nuevo Juicio*, la cual fue posteriormente enmendada el 4 de abril de 2025.

El 9 de abril de 2025, el TPI emitió una *Resolución* declarando No Ha Lugar la solicitud de nuevo juicio al amparo de la Regla 188

(C) de Procedimiento Criminal. La parte apelante no solicitó reconsideración de dicho dictamen.

La vista de dictar *Sentencia* fue celebrada el 29 de abril de 2025. El TPI condenó a la parte apelante a cumplir la pena de 99 años de cárcel por el asesinato en primer grado, caso criminal EVI2024G0001; por la tentativa de asesinato, caso EVI2024G0002 se le impuso una pena de 20 años de cárcel, en el caso EBD2024G0010 por tentativa de robo una pena de 10 años de cárcel y en el caso EOP2024G001 una pena de 20 años. Estas penas a cumplirse de manera concurrente entre sí y consecutiva con la pena de 10 años de cárcel por el Art. 6.05 de la Ley Núm. 168-2019 en el caso ELA2024G003, a lo cual se le suma el doblamiento que disponer el Art. 6.01 de la referida disposición legal para un total de 20 años; y la pena de 5 años por el Art. 6.14 de la Ley Núm. 168-2019 en el caso ELA2024G004, con el doblamiento de la pena del Art. 6.01 de la Ley Núm. 168-2019, para un total de 10 años. El total de pena de cárcel a cumplir por el apelante es de 129 años.

Inconforme, el 23 de mayo de 2025, el señor Rivera Rodríguez presentó un recurso de *Apelación* en la que coligió los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE INSTANCIA UN VEREDICTO DE CULPABILIDAD EN EL PRESENTE CASO DE EPÍGRAFE A PESAR DE QUE NO SE PROBÓ EL CASO MÁS ALLÁ DE DUDA RAZONABLE.
>
> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE NUEVO JUICIO PRESENTADA POR EL APELANTE EL 24 DE MARZO DE 2025.
>
> TERCER ERROR: EL TRIBUNAL DE PRIMERA INSTANCIA ABUSÓ DE SU DISCRECIÓN AL NO INCLUIR COMO INSTRUCCIONES AL JURADO EL QUE DEBIDO A QUE NO SE ENCONTRÓ EL ARMA DE FUEGO LA IDENTIFICACIÓN DE LA MISMA DEBERÍA SER AQUILATADA DE FORMA CLARA Y CONVINCENTE.
>
> CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ENCONTRAR CULPABLE POR EL DELITO DE TENTATIVA DE ROBO AUN CUANDO NO DESFILÓ PRUEBA DE TODOS LOS ELEMENTOS DEL DELITO.

QUINTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CULPABLE DEL DELITO ARTICULO 93 B DEL CÓDIGO PENAL DE PUERTO RICO (ASESINATO ESTATUTARIO) AL NO HABERSE CONSUMADO EL DELITO BASE TENTATIVA DE ROBO.

El 30 de enero de 2026, este Tribunal acogió la transcripción de la prueba oral con las instrucciones al jurado con las enmiendas sugeridas por el Ministerio Público, sin objeción de la parte apelante.

La parte apelante radicó su *Alegato Suplementario* el 6 de febrero de 2026 y posteriormente, presentó un *Alegato Suplementario Enmendado* y *Apéndice enmendado* el 23 de febrero de 2026. Por su parte, el Pueblo presentó su *Alegato en Oposición* el 10 de abril de 2026.

Evaluado la totalidad de los escritos, la prueba desfilada y admitida durante el juicio por jurado, procedemos a disponer.

**II.**

**A.**

Es norma reiterada que, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 338 (2021); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015). Bajo el crisol doctrinario, los jueces del TPI están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Penna Rivera v. Pacheco Caraballo*, 213 DPR 1009, 1025 (2024); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

De modo que, el Tribunal Supremo ha expresado: "[l]a intervención con la evaluación de la prueba testifical procedería en casos en los que luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que

estremezca nuestro sentido básico de justicia". *Rosado Muñoz v. Acevedo* Marrero, 196 DPR 884, 917-918 (2016). Por tanto, "[c]uando la evidencia directa de un testigo le merece entero crédito al juzgador de hechos, ello es prueba suficiente de cualquier hecho". *Rivera Menéndez v. Action Service,* 185 DPR 431, 444 (2012).

A la luz de lo anterior, el foro apelativo no deberá intervenir con las determinaciones de hechos, con la adjudicación de credibilidad realizada por los foros primarios, ni con el ejercicio de su discreción, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto. *W.M.M. P.F.M., et al v. Colegio et al.*, 211 DPR 871, 903 (2023). Por lo que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, el foro apelativo estará imposibilitado de intervenir con la apreciación de la prueba y las determinaciones de los tribunales de instancia. En cuanto al prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013).

En cambio, el foro intermedio podrá intervenir con la apreciación de la prueba cuando de una evaluación minuciosa surjan "serias dudas, razonables y fundadas, sobre la culpabilidad del acusado". *Pueblo v. Santiago, et al.,* 176 DPR 133, 148 (2009). A tenor con lo anterior, si luego de que se realiza un análisis ponderado sobre la prueba desfilada, se sostiene que existe duda razonable y fundada sobre si se probó la culpabilidad del acusado más allá de duda razonable, este Tribunal deberá dejar sin efecto el fallo o veredicto condenatorio emitido por el foro de primera instancia. Es decir, en los casos de naturaleza criminal, no tendremos esa deferencia si: (1) hubo prejuicio, parcialidad o pasión,

o (2) la prueba no concuerda con la realidad fáctica, es increíble o imposible. *Pueblo v. Resto Laureano,* 206 DPR 963, 968 (2021).

Conforme con estos principios, la determinación de culpabilidad que realiza el foro de primera instancia estará cobijada por una presunción de corrección y regularidad y, por ende, es merecedora de gran deferencia por parte de este Tribunal. *Pueblo v. Cabán Torres,* 117 DPR 645, 653-654 (1986).

**B.**

La Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, consagra la presunción de inocencia como uno de los derechos fundamentales que le asiste a toda persona acusada de cometer un delito. *Pueblo v. Negrón Ramírez,* 213 DPR 895, 907 (2024). Toda persona acusada goza de la presunción de inocencia en los procesos criminales, cobijándole desde el inicio de la acción penal hasta el fallo o veredicto de culpabilidad. Es decir, todo acusado se considera "inocente" hasta que el Estado pruebe que es culpable más allá de duda razonable mediante la presentación de prueba suficiente y satisfactoria sobre cada uno de los elementos del delito y su conexión con el acusado. *Pueblo v. Irizarry Irizarry,* 156 DPR 780, 787-788 (2002). Así reconocido, en los procesos judiciales penales, se entiende que el Estado es quien tiene el peso de la prueba. *Pueblo v. Toro Martínez,* 200 DPR 834, 856 (2018); *Pueblo v. García Colón I,* 182 DPR 129, 174 (2011). Dicha presunción también forma parte de las Reglas 110 y 304 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 110 y 304.

Dicho esto, la Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, R. 110, establece que, "[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá". Como vemos, conforme a nuestro ordenamiento jurídico,

el acusado no tendrá obligación alguna de aportar prueba para defenderse y podrá descansar plenamente en la presunción de inocencia que le cobija. *Pueblo v. Irizarry Irizarry, supra*, pág. 787.

El juzgador de hechos vendrá llamado a evaluar y aquilatar la evidencia presentada ante sí para determinar cuáles hechos han quedado probados o establecidos. Regla 110 de Evidencia, *supra*. En casos criminales con derecho a juicio por Jurado, esta función le corresponde al Jurado, el cual está constitucionalmente encomendado a recibir la prueba, adjudicar los hechos en base a ésta y aplicar el derecho según le instruya el tribunal. *Pueblo v. Negron Ramírez, supra*, págs. 908-909; *Pueblo v. Santa Vélez*, 177 DPR 61, 65-66 (2009)

No obstante, tal estándar de exigencia probatoria no significa que el Estado tenga que presentar prueba que establezca la culpabilidad del acusado con certeza matemática. *Pueblo v. Negron Ramírez, supra*, pág. 907; *Pueblo* v. *Toro Martínez,* 200 DPR 834 (2018). La prueba sobre la culpabilidad del acusado es satisfactoria cuando produce certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Negron Ramírez, supra*, pág. 908.

En cuanto a la duda razonable que acarrea la absolución del acusado, no es una duda especulativa o imaginaria, ni cualquier duda posible. *Pueblo v. Irizarry Irizarry, supra*, pág. 788. Más bien, se trata de aquella duda que es producto de una consideración serena, justa e imparcial de la totalidad de la evidencia del caso. *Íd.* Es decir, existe duda razonable cuando el juzgador de los hechos siente en su conciencia insatisfacción o intranquilidad con la prueba. *Pueblo v. García Colón I, supra*, pág. 175.

Con lo anterior expuesto, como cuestión de derecho, la determinación sobre si se probó la culpabilidad del acusado más allá de duda razonable es revisable en apelación, toda vez que, "la

apreciación de la prueba desfilada en un juicio es un asunto combinado de hecho y derecho". *Pueblo v. Irizarry Irizarry, supra*; *Pueblo* v. *Rivero, Lugo y Almodóvar*, 121 DPR 454, 472 (1988).

Al revisar una determinación sobre una conducta criminal debemos tener presente que la apreciación de la prueba corresponde al foro sentenciador, salvo que se deba revocar porque surgió de una valoración apasionada, prejuiciada o parcializada, o el dictamen es manifiestamente erróneo. *Pueblo* v. *Toro Martínez,* supra, págs. 857-858. El juzgador tampoco está obligado a decidir de acuerdo con las declaraciones de cualquier cantidad de testigos, si no le convencen frente a un número menor u otra evidencia que le resulte más convincente. *Pueblo* v. *Toro Martínez, supra,* págs. 859-860.

El foro revisor se encuentra en igual posición que el tribunal sentenciador para evaluar las conclusiones de hechos fundamentadas en prueba documental o pericial. El Tribunal de Apelaciones tiene la facultad de adoptar su propio criterio en la apreciación y evaluación de la prueba pericial y para descartarla, aunque resulte técnicamente correcta. *Santiago Ortiz* v. *Real Legacy et al,* 206 DPR 194, 219 (2021).

**C**.

En lo pertinente, en un juicio por jurado, el tribunal debe impartir instrucciones haciendo un resumen de la evidencia y explicando los asuntos relacionados a derecho importantes para la información del jurado. Todas las instrucciones serán verbales a menos que las partes consintieren otra cosa. Ninguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud. Regla 137 de Procedimiento Criminal, 34 LPRA Ap. II; *Pueblo v. Colón González,* 209 DPR 967, 987 (2022). Las

instrucciones deben ser correctas, claras, precisas y lógicas. *Pueblo v. Ortiz Martínez,* 116 DPR 139 (1984). El manual de instrucciones al jurado constituye una buena práctica con tal de minimizar las posibilidades de error en las instrucciones al jurado y lograr uniformidad. *Pueblo v. Colón González, supra,* pág. 987-988, citando a *Pueblo v. Echevarría Rodríguez I,* 128 DPR 299, 343 (1991). Dichas instrucciones tienen una presunción de corrección y quien las impugne debe demostrar que la instrucción es errónea. Pueblo v. Ortiz González, 111 DPR 408, 410 (1981); *Pueblo v. Colón González, supra,* pág. 988.

**D.**

El Art. 92 del Código Penal, 33 LPRA sec. 5141, establece que, "asesinato es dar muerte a un ser humano a propósito, con conocimiento o temerariamente". En esa línea, el Art. 93(a) del Código Penal, supra sec. 5142, dispone que, "todo asesinato perpetrado por medio de veneno, acecho, tortura, estrangulamiento, sofocación o asfixie posicional, o a propósito o con conocimiento". El delito de asesinato se trata como un solo delito, pero dividido en varios grados. *Pueblo v. Roche,* 195 DPR 791, 797 (2016). Asesinato en primer grado es toda muerte causada a propósito o con conocimiento. D. Nevares-Muñiz, *Código Penal de Puerto Rico Comentado,* Ed. Instituto para el Desarrollo del Derecho, Inc., 2019, pág. 149. Quien asesina a propósito tiene el objetivo consciente de causar la muerte de la víctima; mientras que mata con el estado mental de conocimiento quien sabe que la muerte es una consecuencia prácticamente segura de su conducta. *Íd.,* pág. 155. En *Pueblo v. Rodríguez Pagán,* 182 DPR 239 (2011), citando a *Pueblo v. Rodríguez Vicente,* 173 DPR 292 (2008), nuestro Tribunal Supremo explicó que el asesinato es un delito cometido intencionalmente. En específico, lo definió como "un delito que, por su definición y naturaleza, conlleva un acto perverso,

malintencionado y contrario a los valores éticos y morales de nuestra sociedad". *Pueblo v. Rodríguez Vicente, supra,* pág. 301. En *Pueblo v. Rodríguez Pagán, supra,* el Tribunal Supremo aclaró que el asesinato en primer grado requiere que la persona tenga un deseo específico de efectuar el acto y quiera producir el resultado, ratificándolo con su actuación.

Por su parte, el Artículo 93 (b) del Código Penal de 2012, supra, tipifica como asesinato en primer grado todo asesinato causado al perpetrarse o intentarse cometer ciertos delitos en los que se incluye el robo. Este delito es conocido como asesinato estatutario o *felony murder rule*. Véase, *Pueblo de Puerto Rico v. José García Cartagena y Víctor J. Díaz Fontánez,* 214 D.P.R. 69,79 (2024)(Opinión Concurrente).  En esencia, mediante el asesinato estatutario se sanciona con una pena más severa a aquella persona que produce la muerte de un ser humano al consumar o intentar consumar uno de ciertos delitos graves que se especifican en la ley (llamados delitos base). Id, citando a D. Nevares-Muñiz, Código Penal del Estado Libre Asociado de Puerto Rico, 2.a ed. rev., San Juan, Instituto para el Desarrollo del Derecho, 2005, pág. 143. Véase Pueblo v. Hernández Pagán, 119 DPR 424 (1987).

Nuestro Tribunal Supremo ha reconocido que en el asesinato estatutario no sólo incluye una determinación legislativa de *mens rea* sino que, también, incluye un criterio sobre causalidad. Es decir, el asesinato estatutario es una situación en que un ingrediente esencial de un delito lo constituye a la vez la comisión de, o el intento dé cometer, otro delito. En este escenario la muerte es a fortiori asesinato en primer grado, aunque no hubiese prueba separada de deliberación y premeditación. *Pueblo de Puerto Rico v. Víctor Robles González,* 132 DPR 554, 556 (1993). Es por ello, que el Ministerio Fiscal no tiene que presentar prueba sobre premeditación, deliberación e intención específica de matar en el caso del asesinato

estatutario; solamente de la intención del imputado de cometer el llamado "delito base". Id.

Por otro lado, el Artículo 189 tipifica el delito de robo como "[t]oda persona que se apropie ilegalmente de bienes muebles pertenecientes a otra, sustrayéndolos de la persona en su inmediata presencia y contra su voluntad, por medio de violencia o intimidación, o inmediatamente después de cometido el hecho emplee violencia o intimidación sobre una persona para retener la cosa apropiada". 33 L.P.R.A. sec. 5259. El robo será agravado cuando el bien objeto del delito es un vehículo de motor. Artículo 190 (b) del Código Penal de 2012.

El Tribunal Supremo ha resuelto que el delito de robo no es uno de intención específica. Véase: *Pueblo v. Betancourt*, 66 D.P.R. 132, 133 (1946); *Pueblo v. Asensio Trinidad*, 95 D.P.R. 473, 477 (1967); *Pueblo v. Delgado Lafuente*, 97 D.P.R. 266, 269 (1969).

Por otro lado, el Código Penal establece que habrá la tentativa de cometer unos de los delitos tipificados en dicha legislación "cuando la persona actúa con el propósito de producir el delito o con conocimiento de que se producirá el delito, y la persona realiza acciones inequívoca e inmediatamente dirigidas a la consumación de un delito que no se consuma por circunstancias ajenas a su voluntad". 33 L.P.R.A. sec. 5048.

**E.**

La Sexta Enmienda de la Constitución de Estados Unidos y la Sección II del Art. II de la Constitución de Puerto Rico garantizan el derecho de toda persona acusada de un delito grave a ser juzgado por un jurado imparcial. *Pueblo* v. *Centeno*, 208 DPR 1, 10-11 (2021). Nuestro ordenamiento jurídico presume que los deberes de un jurado se han cumplido con regularidad. No obstante, esa presunción puede rebatirse con prueba que demuestre la irregularidad del procedimiento. *Pueblo v. Santiago Acosta, 121 DPR*

*727, 738-739 (1988).* El veredicto no puede alterarse por indebida presión o influencia al jurado en ausencia de evidencia prima facie de que un elemento extraño permitió la decisión de mayoría. La confidencialidad del proceso deliberativo cede ante la existencia de evidencia prima facie de una anormalidad que afectó seriamente la realización de la justicia y el esclarecimiento de la verdad. Al acusado le compete rebatir la presunción de que el jurado basó su veredicto en la prueba y no en hechos extraños o bajo indebida influencia o presión. El veredicto del jurado no puede atacarse bajo la premisa de prejuicio implícito, ya que debe demostrase un perjuicio real. El acusado que alegue error perjudicial tiene que demostrar que la decisión o actuación objetada tuvo impacto y relieve perceptible en la objetividad del juicio. *Pueblo* v. *Figueroa Rosa,* 112 DPR 154, 158-161 esc. 3 (1982).

La Regla 145 de Procedimiento Criminal, 34 LPRA, Ap. II, R. 145, impone al tribunal la obligación de preguntarle al presidente del Jurado si el veredicto que se entregó por escrito es el del jurado y cuántos de sus miembros votaron en favor del mismo. El veredicto será aceptado por el tribunal y leído por el secretario, si el presidente responde en la afirmativa y es conforme a la ley.

**F.**

La *Ley de Armas de Puerto Rico de 2020,* Ley Núm. 168-2019, 25 LPRA sec. 461 (Ley Núm. 168-2019), tipifica como conducta delictiva el poseer, transportar o usar un arma de fuego sin la debida autorización. Sobre el particular, el Artículo 6.05 de la Ley de Armas, supra, dispone que toda persona que porte, transporte o use cualquier arma de fuego, sin tener una licencia de armas vigente, incurrirá en delito grave. 25 LPRA sec. 466d.

El Artículo 1.02 (e) define "armas de fuego" como "cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión. El termino arma de fuego

incluye, pero no se limita a, pistola, revolver, escopeta, rifle, carabina, incluyendo el marco, armazón o el receptor donde el manufacturero coloca el número de serie de tales armas. Asimismo, se define la "licencia de armas" como aquella licencia concedida por la Oficina de Licencias. *supra* sec. 461a(e) (q).

Por su parte, Artículo 6.14 de la Ley 168-2019, *supra* sec. 466m tipifica como delito el disparar o apuntar un arma de fuego. Dicho artículo establece como delito grave con pena de reclusión el que una persona, excepto en casos de legítima defensa, propia o de terceros, o de actuaciones en el legítimo desempeño de funciones oficiales o actividades legítimas de deportes:

> (a) voluntariamente dispare cualquier arma de fuego fuera de los lugares autorizados por esta Ley, aunque no le cause daño a persona alguna; o
> (b) intencionalmente apunte hacia alguna persona con un arma de fuego, aunque no le cause daño a persona alguna.

Por otro lado, el Libro de Instrucciones al Jurado examinando el Artículo 6.05 de la Ley Núm. 168-2019, *supra*, establece que los elementos de este delito son (1) Portar un arma de fuego y (2) sin tener una licencia de armas vigente. Véase, Secretariado de la Conferencia Judicial y Notarial, Libro de Instrucciones al Jurado, Rev. 2022, Poder Judicial de Puerto Rico, Instrucción 13.6, pág. 347.

Así como la Ley Núm. 168-2019*, supra,* el Libro de Instrucciones al jurado define "arma de fuego" como "cualquier arma que, sin importar el nombre, sea capaz de lanzar un proyectil o proyectiles por acción de una explosión" y licencia de armas como aquella licencia concedida por la Oficina de Licencia de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones. *Íd*, pág. 348. Dicha instrucción dispone que se le debe instruir al jurado que no es requisito que el Ministerio Público presente en evidencia el arma de fuego, si existen otros elementos o

circunstancias demostrativas que les permita concluir que la persona acusada poseía y portaba el arma.

Por otro lado, el Libro de Instrucciones al Jurado dispone sobre el Art. 6.14 de la Ley Núm. 168-2019, *supra*, que los elementos de la primera modalidad son: (1) voluntariamente; (2) disparar cualquier arma de fuego, y (3) fuera de los lugares autorizados por la Ley de Armas. Id. pág. 368. Por otro lado, los elementos de la segunda modalidad son: (1) intencionalmente, y (2) apuntar hacia alguna persona con un arma de fuego. *Íd.*, Instrucción 13.14, pág. 369.

### III.

En su Recurso de *Apelación* el Apelante formuló cinco (5) señalamientos de errores.

Por estar relacionados discutiremos en conjunto el primer, cuarto y quinto señalamiento de error. Veamos.

La parte apelante plantea como primer error que el TPI erró al emitir un veredicto de culpabilidad, a pesar de que no se probó el caso más allá de duda razonable. En su cuarto señalamiento de error argumentó, que el TPI erró al encontrar culpable al apelante por el delito de tentativa de robo aun cuando no desfiló prueba de todos los elementos del delito y en su quinto error, que el TPI falló al encontrar culpable al señor Rivera Rodríguez del asesinato estatutario sin haberse consumado el delito base de tentativa de robo.

Evaluada y ponderada cuidadosamente toda la prueba, concluimos que el TPI no cometió los errores señalados y que la prueba desfilada demostró más allá de duda razonable, todos los elementos de los delitos imputados.

La prueba del Ministerio Público consistió en el testimonio de la señora Yadelys Pachecho Ortiz, Agte. Lorenzo Phillips Jusino, el señor Jorge Aponte Lespier, el señor Noel Rodríguez Napoleoni, el

señor John Miranda Rivera, la señora Jovelys Fisher Pérez, el patólogo Francisco Dávila Toro, el señor Miguel Ángel Rivera Colón, el señor Edward Pérez Benítez, el Agte. Federico Colón Zayas, la señora Margarita Sánchez Vega y el Agte. Jesús Manuel Torres Ramírez. Por su parte, la parte apelante presentó el testimonio del Agte. Ángel Candelario Rodríguez, luego de que el Ministerio Público informara que no sería utilizado como testigo e informó que la defensa podía presentarlo como testigo.

En lo pertinente, el Agente Phillips Jusino, placa 380411, adscrito al distrito de Cayey declaró que, el 3 de diciembre de 2023, entró a trabajar a las 4:00am y se encontraba en patrullaje preventiva con el Agente Ramirez y la Agente Janice Cintrón a eso de las 10:34 de la mañana, cuando el Centro de Mando cursó información sobre una persona herida, herida de la bala. [3] Declaró que, se informó por radio sobre una persona herida de bala, en la carretera 184, kilómetro 22.6 21 de Guavate. Indicó que, al llegar al lugar se percató de un vehículo Nissan, Altima color negro. Luego, entrevistó a los paramédicos Rojas y Santiago en el lugar, en el que le indicaron que, la persona a eso de la 10:57, no tenía signos vitales. Después, el agente verificó la escena, procedió acordonar el área, junto con los compañeros. La persona tenía múltiples impactos de bala. Testificó que, el área de la escena era un área verde y aislada. Manifestó que, en la escena había dos (2) personas de la Iglesia con la otra víctima, Margarita Sánchez. [4] Aseveró que, observó a una persona de persona, de tez blanca dentro del vehículo Nissan, Altima dos mil, 2003, que se encontraba fuera en el pavimento y observó múltiples casquillos de bala en el lugar de la escena; la carretera

---

[3] Véase, Transcripción de la vista del 17 de diciembre de 2024, págs. 16, línea 14-18, pág. 16, línea 30 a la pág. 17, línea 1-27.
[4] *Íd.* Pág.18, línea 27.

184. Testificó que, Margarita Sánchez era la esposa del occiso y que a penas la pudo entrevistar porque estaba descontrolada.[5]

El Agente Phillips declaró que, en la entrevista con Margarita Sánchez esta le indicó que "al ellos quedarse sin señal, ya que estaban en el área perdidos que no encontraban donde estaba la iglesia. Donde se iban a estar reuniendo las personas de la iglesia. Eh se estacionaron ya que perdieron señal, al estacionarse para poder realizar la llamada se, se detiene un vehículo compacto eh color gris el cual le anuncia ¿verdad? lo que es eh, un asalto de que le pidiera el, le pidieron dinero, y estas personas, pues pro(sic) eh rápidamente comenzaron a dispararle, eh ella pudo lograr ver una, ¿verdad? un solo el individuo del, que se encontraba en el área del pasajero ya que el conductor pues no, al ella agacharse para poder protegerse no pudo".[6]

El investigador forense, Jorge Aponte Lespier expresó que, el 3 de diciembre de 2023 a eso de las 11:30 hubo una llamada al retén del Instituto de Ciencias Forenses, que había una escena de crimen en la carretera 184 en barrio 30 Guavate.[7] Cuando llegó al lugar a la 1:18pm, se encontró el área acordonada.[8] Procedió a tomar fotos generales y cerca de la evidencia; tomándole foto a los casquillos y al occiso, quien se encontraba en el interior del vehículo.[9]

Por su parte, el investigador forense, Noel Rodríguez Napoleoni, indicó que, se encontraba el 3 de diciembre de 2023 junto a su compañero Aponte Lespier cuando recibió una llamada, del sargento Egeas, a las 11:30 de la mañana notificando de una muerte violenta en la carretera 184, kilómetro 22.6 en el barrio Guavate de Cayey. [10] En la escena, había casquillos de bala disparados y

---

[5] *Íd.* Pág. 19, línea 11-31.
[6] Véase, Transcripción de la vista (TPO) del 17 de diciembre de 2024, pág. 24, línea 22-29.
[7] *Íd.* Pág. 40, línea 25-31.
[8] *Íd.* Pág. 41, línea 21-23.
[9] *Íd.* Pág.42, línea 27-30 y pág. 43, línea 1-5.
[10] TPO de la vista del 3 de febrero de 2025, Pág. 51, línea 28-30, pág. 52, línea 1, línea 23-30.

encontró una bala, calibre nueve milímetros.[11]  En el interior del vehículo, en el asiento del conductor se encontraba el occiso. En momento del examen preliminar del occiso, se recuperó en el cuello y en la espalda del occiso un fragmento de blindaje. [12] Indicó que, en la escena habían siete (7) casquillos de bala disparados calibre nueve milímetros.[13]  Señaló que, el occiso fue identificado como Fidencio Alicea Arroyo.[14] El occiso mostraba heridas de aparente proyectil de balas.[15] En cuanto al vehículo, manifestó que, el vehículo del lado izquierdo, el cristal del pasajero y el de la puerta trasera, estaban rotos.[16] Igualmente, describió que, en la puerta delantera derecha había una perforación de proyectil de bala disparado. Así como una perforación en el panel interior de la puerta delantera izquierda de la parte superior media. Una perforación en el panel interior de la puerta delantera izquierda parte posterior media. Y una perforación en el panel interior de la puerta delantera derecha parte posterior superior.[17]

El testigo John Miranda Rivera, investigador forense del Instituto de Ciencias Forense planteó que, realizó un análisis de trayectoria de disparo del Nissan, modelo Altima negro, cuatro puertas, con la tablilla ITG-932.[18] Según su análisis, los disparos se produjeron desde el exterior al interior del vehículo. [19]

El patólogo, David Torres del Instituto de Ciencias Forense le hizo el examen de autopsia al occiso Fidencio Alicea Arroyo.[20] Declaró que recolectó 4 proyectiles del cuerpo del occiso y que el

---

[11] *Íd.* Pág. 55, línea 1-6.
[12] *Íd.* Pág. 55, línea 8-11.
[13] *Íd.* Pág. 57, línea 18-20.
[14] *Íd.* Pág. 57, línea 28.
[15] *Íd.* Pág. 59, línea 15-16.
[16] *Íd.* Pág. 61 de la TPO, línea 28-29.
[17] *Íd.* Pág. 61 de la TPO, línea 4-12.
[18] TPO vista del 5 de febrero de 2025, pág. 90, línea 20-22, pág. 91, línea 10, pág. 92, línea 10, pág. 95, línea 15.
[19] *Íd.* Pág. 99, línea 11-12, línea 27-27.
[20] *Íd.* Pág. 120, línea 14-22, pág. 124, línea 17-24.

occiso tenía 8 heridas de bala.[21]La causa de la muerte fue las heridas de bala. [22]

Por su parte, el testigo Miguel Ángel Rivera Colón declaró que conoce al apelante hace más de quince (15) años. [23] Relató que, el 3 de diciembre de 2023 se encontraba compartiendo con el apelante; que llevaban desde el día antes en un garaje de Patillas de Ecomaxx llamado el cerrito. [24] Indicó que, el 2 de diciembre de 2023, el apelante lo buscó a su casa entre 8:00pm a 9:00pm en un vehículo Nissan Versa y le pidió que él guiara.[25] Sostuvo que, estuvo con el apelante compartiendo en el Ecomaxx, fumando marihuana, oliendo cocaína y que luego para Villa Pesquera.[26] Declaró que como a las 10:35pm, regresaron al garaje el Cerrito y que se quedaron allí tomando cerveza, fumando marihuana y oliendo cocaína hasta el amanecer.[27] Testificó que, luego de salir del garaje Ecomaxx al amanecer, pasearon en el carro hasta que llegaron al área de Guavate. [28] Declaró que, el se mantuvo conduciendo el vehículo Nissan Charchoal Grey, mientras el apelante se encontraba en el asiento del pasajero. En horas de la mañana, no se recuerda la hora exacta, pasaron el Charco Azul y la Santa Montaña, mientras transitaban por Guavate, cuando el apelante sacó un arma de fuego nueve milímetros. Afirmó que, el conducía de Patilla a Cayey. Expresó que cuando vio que el apelante sacó el arma, le preguntó que estaba pensando. Mencionó que, el apelante le dijo que iba a asaltar a alguien porque estaba "descuadrado de cocaína", de la que vendía. [29] Esbozó que, le ofreció dinero al apelante pero que este no lo aceptó.[30] Testificó que, mientras bajaban la recta en dirección de

---

[21] *Íd.* Pág. 141, línea 19-21, línea 30.
[22] *Íd.* Pág. 142, línea 1-2.
[23] *Íd.* TPO vista del 7 de febrero de 2025, pág. 147, línea 30, pág. 148, línea 4-18, 25-30.
[24] *Íd.* Pág. 149, línea 1-4, línea 9 -19, 24-25
[25] *Íd.* Pág. 149, líneas 28-31, pág. 150, línea 20-23.
[26] *Íd.* Pág. 151, línea 13-16. Línea 27.
[27] *Íd.* Pág. 152, líneas 25-31, pág. 153, líneas 1-12.
[28] *Íd.* Pág. 154, línea 21.
[29] *Íd.* Pág. 155, líneas 2-30, pág. 156, líneas 1-18.
[30] *Íd.* Pág. 157, línea 10.

Patillas hacia Cayey, vio un carro Nissan negro a la orilla del pasto a mano izquierda. Relató que, observó a un señor trigueño en el volante del carro que estaba hablando por el celular u que en el asiento del pasajero delantero había una mujer. Explicó que, le dijo al apelante "que tenía que respetar los códigos" por ser personas mayores. El apelante le "manoteó" con la pistola porque los quería asaltar. [31] Testificó que, el apelante lo hizo virar con la pistola, y el apelante le dijo que, si no disparaba, lo iba a matar a él. Declaró que, cuando el apelante lo hizo virar, sacó una pistola 22 color gris del bolsillo y se la entregó. Indicó que cuando tomó el arma que le entregó el apelante, salió del vehículo y se paró en el área del tapón de la gasolina del carro Nissan *Charchoal grey* para cubrirlo.[32] Expresó que, cuando el apelante se bajó del vehículo, se paró frente al señor y le dijo "los chavos, los chavos" e hizo una detonación, y que él se puso nervioso y también hizo dos o tres detonaciones.[33] Manifestó que, en ese momento, la señora que estaba en el asiento del pasajero grito "Fidencio", el occiso, subió el cristal y el apelante le hizo siete a ocho detonaciones que rompieron los vidrios del lado del chofer y del pasajero posterior.[34] Manifestó que, el apelante hizo los disparos hacia el señor. [35] Luego de las detonaciones, ellos se montan al vehículo y se van en dirección hacia Patillas. Él le reclamó por qué había matado a eso viejos. Él estaba molestó y le dijo "¡Ah! tú no ere leal". Indicó que, en esos momentos, el se estaciona en la orilla derecha de la carretera. Entró un forcejeo con el apelante, porque según testificó, el apelante quería ir a matar a la señora.[36] Declaró que luego fueron a casa del apelante, y que allí éste, quien se quedó con las armas, le pidió que quemara el vehículo.[37] Relató

---

[31] *Íd.* Pág. 157, líneas 10-31, pág. 158, línea 1-9.
[32] *Íd.* Pág. 158, líneas 10-30, pág. 159, líneas 5-7.
[33] *Íd.* Pág. 160, líneas 1-19, pág. 161, línea 10.
[34] *Íd.* Pág. 161, línea 10-22.
[35] *Íd.* Pág. 161, línea 10-22.
[36] *Íd.* Pág. 161, línea 27-30, pág. 162, línea 1-2.
[37] *Íd.* Pág. 162, líneas 8-9, pág. 164, líneas 10-12, pág. 164, líneas 24-31, pág. 165, líneas 1-2.

que, quemó el vehículo Nissan en el área de punta del viento, un mangle, en Villa Pesquera.[38]

El testigo Edward Pérez Benítez, perito en balístico o examinador de armas de fuego y sus componentes, declaró que examinó una serie de piezas de evidencia: unos casquillos y unos proyectiles que fueron recuperados de la autopsia del occiso y otros recuperados en la escena y de un vehículo. [39] Concluyó que, según su análisis, los casquillos fueron disparados por dos armas: un calibre nueve milímetros y un calibre veintidós. [40]

La señora Margarita Sánchez Vega declaró que, tenía 61 años y que estuvo casada con Fidencio Alicea Arroyo por quince años.[41] Aseveró que, el 3 de diciembre del 2023, su esposo y ella tenían planeado una actividad de la iglesia que se iba a celebrar por el lago Carite. Salieron de su casa como a las 10:00am en el Nissan, Altima negro 2003, que pertenecía a su esposo.[42] Testificó que, para ir a la actividad se dirigieron a la autopista y tomaron la salida de Guavate, en Cayey y que en ese momento puso el sistema de *GPS* para que les indicara como llegar. Indicó que su esposo, el señor Alicea estaba conduciendo y ella estaba en el asiento de pasajera. Relató que, mientras estaban de camino, se percato de que no estaban yendo para el sitio correcto y le pidió a su esposo que regresaran a la calle principal para coger mejor señal y llamar a alguien que les indicara como llegar a la actividad. [43] Manifestó que, se estacionaron en un lugar solitario "lleno de yerba" y vegetación. Indicó que el día estaba claro y hacía mucho sol. Planteó que, luego de detenerse, llamó a una de las personas de la actividad para que le explicara cómo llegar, y mientras estaba hablando por teléfono un carro gris se

---

[38] *Íd.* Pág. 166, líneas 12-27.
[39] TPO del 12 de febrero de 2025, pág. 208, línea 5, pág. 209, líneas 23-24, pág. 211, líneas 27-31; pág. 212, líneas 3-30, pág. 213, línea 1.
[40] *Íd.* Pág. 218, línea 1-9.
[41] *Íd.* Pág. 237, líneas 18-24.
[42] *Íd.* Pág. 238, línea 16- 24, pág. 239. Línea 1-4.
[43] *Íd.* Pág. 239, línea 12-20, pág. 240, línea 1-7.

estacionó a la par con el carro de ellos. Expresó que, miró a la persona que estaba en el pasajero del carro para ver si era alguien del grupo que participaría de la actividad pero que no lo reconoció.[44] Describió a la persona como un muchacho 20 a 25 años, flaco, tenía camisa blanca, mucho pelo negro "abulta'o"; estaba recortadito porque se le veía la oreja y tenía como "baby fase".[45] Expresó que el muchacho también los miró a ellos y ve que el pasajero del vehículo sacó un arma con su mano derecha y les dijo "denos el dinero".[46] Explicó que, su esposo se puso nervioso y se movió hacia su lado. Indicó que el muchacho que les pidió el dinero empezó un tiroteo, "un bum, bum, bum". Relató que se bajó para esconderse; comenzó a gritar y le decía a la muchacha en el celular que les estaban disparando, que la estaban asaltando y que los ayudaran.[47] Narró que, en medio de todo eso, su esposo se tiró encima de ella y le dice "me mataron, me mataron", cayendo sobre ella. Expresó que, de momento hubo un silencio y se levantó un poco para ver que esta pasando y en ese momento el carro corrió para atrás y cayeron "sembrados en el matorral de hierbas que era como una pared". Expresó que en ese momento dijo "pues ahora vienen estos a terminarme a mí para que no sea testigo". Testificó que, se quedó dentro del carro porque había yerba y la puerta no se podía abrir.[48] La señora Sánchez identificó al apelante como el muchacho que estaba sentado en el asiento del pasajero, que le sacó un arma de fuego y les dijo que le diera dinero.[49] Indicó que, posteriormente, el 8 de diciembre de 2023 fue a la Comandancia donde se celebró una rueda de detenidos e identificó al apelante como el individuo que le disparó a su esposo. [50]

---

[44] *Íd.* Pág. 238, líneas 16-31, pág. 239, líneas 2-30, pág. 240, líneas 1-31, pág. 241, líneas 1-2.
[45] *Íd.* Pág. 241, línea 2-5.
[46] *Íd.* Pág. 241, línea 15-20.
[47] *Íd.* Pág. 241, líneas 19-21, pág. 242, línea 11.
[48] *Íd.* Pág. 241, líneas 23-31, pág. 242, líneas 1-3.
[49] *Íd.* Pág. 242, línea 14 a la 22.
[50] *Íd.* Pág. 248, líneas 1-15, pág. 249, líneas 1-3.

Como vemos de la prueba del Ministerio Público, se presentó prueba que demostró más allá de duda razonable la culpabilidad del apelante. La parte apelante planteó que no se presentó prueba específicamente sobre la tentativa de robo, no obstante, quedó evidenciado que el apelante le solicitó al testigo Miguel Ángel Rivera Colón que se detuviera en donde se encontraba el vehículo del occiso con la intención de asaltarlos. En esa línea, con un arma de fuego, les requirió que le dieran dinero y luego emitió varios disparos. Además, luego que le disparó al señor Alicea Arroyo, la señora Sánchez Vega comenzó a gritar expresando que la estaban asaltando y disparando, pidiendo ayuda. El apelante salió hacia el vehículo Nissan, marchándose del lugar.

Tras evaluar la totalidad de la prueba vertida y admitida en juicio, concluimos que el primer, cuarto y quinto error no se cometieron.

En su segundo señalamiento de error, la parte apelante argumentó que, el TPI erró al declarar No Ha Lugar la *Moción de Nuevo Juicio* presentada por el apelante el 24 de marzo de 2025. Dicho cuestionamiento no fue discutido por el apelante en su alegato suplementario enmendado y el mismo fue presentado tardíamente, por lo que no tenemos jurisdicción para considerarlo. Del expediente judicial, se desprende que la parte apelante radicó una *Moción de Nuevo Juicio* el **24 de marzo de 2025**, la cual fue denegada por el TPI mediante una *Resolución* emitida el **9 de abril de 2025**, notificada el mismo día. La parte apelante tenía el término de treinta (30) días a partir de la notificación de dicho dictamen, para recurrir ante este foro apelativo, según la Regla 32 (c) del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 47. [51]    Por ende, la parte

---

[51] El recurso de certiorari para revisar cualquier otra resolución, orden o dictamen revisable por esta vía de conformidad con la ley, incluida una orden de protección, así como revisar una sentencia final producto de una solicitud de revisión de un laudo de

apelante tenía hasta el **9 de mayo de 2025** para recurrir de la referida *Resolución* denegando la solicitud de nuevo juicio. La parte apelante no presentó un recurso dentro del término reglamentario para revisar dicha determinación. Por el contrario, espero a radicar la apelación, la cual fue presentada el 23 de mayo de 2025, para solicitar la revisión de la sentencia condenatoria e incluyo como uno de los errores la determinación de denegar la concesión de un nuevo juicio. En su consecuencia, no se discutirá dicho señalamiento de error.

Finalmente, la parte apelante en su tercer error planteó que el TPI abusó de su discreción al no incluir como instrucciones al jurado que [el] debido a que no se encontró el arma de fuego [,] la identificación de la misma debería ser aquilatada de forma clara y convincente. Concluimos que el error no fue cometido y la parte apelante renunció a plantearlo en apelación. Veamos.

De la transcripción de la prueba de la vista celebrada el 5 de marzo de 2025, se desprende que la defensa del apelante solicitó una instrucción sobre que la prueba presentada por el Ministerio Público con relación a que la descripción del arma de fuego tenía que ser clara y convincente. El TPI le solicitó a la defensa que indicara a cuál instrucción del Manual del jurado se refería, para poder evaluar la solicitud. La defensa expuso que, según la jurisprudencia de nuestro Tribunal Supremo, sin citar un caso, resolvía que la prueba sobre la descripción del arma de fuego debía ser clara y convincente. No obstante, falló en identificarle al TPI específicamente cual instrucción del Manual del jurado solicitaba que se le diera lectura. La defensa no colocó en posición al Tribunal en identificar que instrucción estaba solicitando se le ofreciera al

---

arbitraje del Tribunal de Primera Instancia se formalizará mediante la presentación de una solicitud dentro de los treinta días siguientes a la fecha del archivo en autos de una copia de la notificación de la resolución u orden recurrida, a menos que alguna ley especial aplicable disponga un término distinto. Este término es de cumplimiento estricto.

jurado. A esos efectos, el TPI resolvió que daría la instrucción del Art. 6.14 y 6.05 de la Ley Núm. 168-2019, *supra,* con los elementos del delito.[52] Consta de la transcripción de la prueba que el representante del apelante, luego de la lectura de las instrucciones al jurado, certificó que estaba conforme con las instrucciones impartidas. Es evidente que, la defensa al no solicitar ninguna otra instrucción al finalizar la lectura y no mantener su solicitud de que se instruyera al jurado que la descripción del arma de fuego debía ser una clara y convincente, renunció a plantear en apelación cualquier error u omisión en las instrucciones impartidas al jurado.[53]

La parte apelante se circunscribió a alegar errores de estricto derecho que no fueron cometidos. Su representación legal no cuestionó la adjudicación de credibilidad del jurado en la apreciación de la prueba. Ante ello, confirmamos el veredicto del jurado y la sentencia apelada.

A la luz de los fundamentos expuestos, no se cometieron los errores formulados por la parte apelante. Ello, pues el Ministerio Público logró demostrar más allá de duda razonable que, el apelante infringió los delitos por los cuales fue enjuiciado. Igualmente, la parte apelante no cuestionó en el momento oportuno alguna omisión a las instrucciones al jurado. En fin, la parte apelante tampoco presentó dentro del término de treinta (30) días una *Moción de nuevo juicio.*

**IV.**

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada.

---

[52] Véase, transcripción de la vista del 5 de marzo de 2025, págs.7 a la 11.
[53] Véase, transcripción de la vista del 5 de marzo de 2025, págs. 63-64, págs. 80-82

Notifíquese.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                        Lcda. Lilia M. Oquendo Solís
                    Secretaria del Tribunal de Apelaciones